### In re: Edward James Rathburn

[266 A.2d 423]

No. 156-69

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

Opinion Filed June 2, 1970

*Bruce Graham,* Stowe, for Plaintiff.

*John L. Stotler,* Montpelier, for Elaine Rathburn, Parent.

*Kimberly B. Cheney,* State's Attorney, for the State.

**Keyser, J.** This is a proceeding under the Juvenile Procedure Act, 33 V.S.A., Chapter 12. On October 17, 1969, the state's attorney for the county of Washington brought a petition to District Court, alleging that Edward James Rathburn, a minor, was a neglected child. The petition alleged that "The child has improper parental care due to mental illness of the mother and the lack of a father" and it was on this ground that the case was tried and decided.

After hearing at which all parties were properly represented, the court determined that the minor child was a "neglected child." The court found that the minor child was 16 days old, the date of birth being October 12, 1969. The court also found the following: "That the father of this child is unknown. The mother is presently and has been a patient at the Vermont State Hospital since 1965. She is an inadequate and unstable person incapable of caring for and providing for a child's physical and emotional needs. The prognosis is that it will be many years before she can be released from the state hospital and even then she will need the help and supervision of skilled people."

Thereafter, the court held a disposition hearing as provided by the procedure act. On October 28, 1969, it ordered that the legal custody without limitation as to adoption, guardianship of the person and property of the child and residual parental rights were transferred to the Commissioner of Social Welfare. It further ordered "that this Order of Disposition will expire, and the child discharged from any and all detention and custody ordered in the proceedings, on the date two years from the date hereof, (or from the date of removal) unless the Order of Disposition has theretofore been renewed by this court."

The case is here on appeal taken by Elaine Rathburn, mother of the subject child, through her guardian *ad litem,* George H. Paine. The attorney for the infant appeared in the proceedings below and has persuasively urged in our Court that the result of the juvenile proceedings be affirmed.

██ ██ At the close of the state's evidence the appellant moved to dismiss the petition. The ground of the motion was "because there has been no evidence that the child concerning which this petition was brought is a neglected child within the meaning of the statute." The court denied the motion.

Although the motion to dismiss was premature, being made before findings by the court, *N.E. Road Machinery Co.* v. *Calkins*, 121 Vt. 118, 122, 149 A.2d 734, the exception to the ultimate finding that the child was a "neglected child" under the statute is valid to preserve the question sought to be raised.

The appellant claims the determination of the court that the child was a "neglected child" was error. She argues that the state has not sustained its burden of proof on this issue of neglect thus raising the question of the sufficiency of the evidence to support the findings of the court. *Krupp* v. *Krupp*, 126 Vt. 511, 515, 236 A.2d 653.

The issue here is whether the child is a "neglected child" within the meaning of 33 V.S.A. § 632(12). This statute reads:

> "(12) 'Neglected child' means a child who
> (A) has been abandoned by his parents, guardian or other custodians, or
> (B) is without proper parental care or control, or subsistence, education, medical or other care or control necessary for his well-being."

Elaine Rathburn was born on February 17, 1950. On October 18, 1965, she was committed to the Vermont State Hospital at Waterbury. She has been at the hospital since that time except for some weekend visits to her mother's home in Morrisville. On one occasion she was home on a six-month trial visit but returned to the hospital after four months because according to her mother she had a "setback" but the daughter said "My mother made me ugly."

While Miss Rathburn was home on one of her visits she became pregnant. The baby was born at the Central Vermont Medical Center on October 12, 1969. At the time of the hearing on the petition the mother had been returned to the State Hospital but the child remained at the Medical Center on a temporary detention order issued by the Juvenile Court on October 17, 1969. The name of the child's father was not disclosed.

The following facts appear from the testimony of Dr. Thomas Phillips, a physician with 20 years of general practice and 7½ years at the state hospital. His diagnosis of Miss

Rathburn was a mild to moderate mental retardation with personality defects.

Dr. Phillips had known Miss Rathburn at the hospital for some three years, especially well during the previous year and nine months, and had been closely associated with her progress at the hospital. Miss Rathburn was tried on various jobs such as helping out on a ward or a waitress serving food but complained she couldn't do it. During the previous year she hadn't been able to do anything definite except hang around the ward and do very minor procedures. But anything that required steady effort over the weeks, Miss Rathburn hadn't been able to do. She is very immature and unstable.

When asked if her condition would be characterized as falling within the category of mental illness, Dr. Phillips replied: "Yes. It is a personality defect and they are closely related. Her chief mental illness is retardation and a tendency to develop psychosis under stressful situation." He further testified that it "will be a long time before Elaine will be able to go and perhaps earn her own way in the community. I think, in fact, it will be years before she can do it alone." Dr. Phillips expressed the opinion that the type of illness which Miss Rathburn has is of a lasting persistent type and, from his experience is without recovery. Further, it was his opinion that she could not presently provide proper care and custody of an infant or take care of a child that needs bringing up.

Another witness, Enid Prebor, a psychiatric technician and ward coordinator who had been with the state hospital for about eleven years and had intimate knowledge of Miss Rathburn, testified that Miss Rathburn "has trouble taking anything under pressure or stress. She becomes upset and cries and thinks she might like to take off sometimes. She withdraws."

Miss Rathburn was tried out in the so-called step or enlarged training program but couldn't cope with the responsibilities involved in the program. She stayed one day then returned to her less demanding duties on the ward. It was the opinion of Mrs. Prebor that "in the care of a child I know Elaine, at this time, is not competent to be responsible for the care of a baby. She would have to have, in my opinion, a great deal of supervision and assistance."

■ Under the governing statute, the burden was on the state to establish that the child, Edward James Rathburn, was "without proper parental care or control, or subsistence, education, medical or other care or control necessary for his well-being."

The stated purpose of the statutes dealing with juveniles is "to provide for the care, protection and wholesome moral, mental and physical development of children coming within the provisions of this chapter (12)," and these statutes are to "be construed to effectuate these purposes." The consideration of the law is entirely concerned with the welfare of the child. *In re Rich,* 125 Vt. 373, 375, 216 A.2d 266.

■ Whether the child is without proper parental care or control necessary for his well-being within the meaning of the statute is a question of fact, 43 C.J.S., Infants, p. 230, and each case must be determined on its own facts. *Id.* p. 231. And a statute providing who are neglected children should be liberally construed to aid the purpose of its enactment. *Id.* p. 230. *In re Hook,* 95 Vt. 497, 499, 115 A. 730, 19 A.L.R. 610. The proceedings relating to dependent and neglected children are protective and not penal, with no legislative purpose to condemn the child or its parents for the difficulties of the situation which confront the court. *Id.* The phrase "without proper parental care" is construed in a less restricted sense than the word "neglect" which, in a legal sense, means not doing what is required by law to be done. See *Town of Milton* v. *Bruso,* 111 Vt. 82, 86, 10 A.2d 203.

The appellant argues that there was no evidence of actual neglect or that the child had been under her care. The appellant was, and had been for some years, an inmate of the state hospital for treatment of her mental condition. The evidence clearly established that Miss Rathburn was unable to withstand stressful situations, became emotional and upset, was unable to assume responsibility and was not competent to be responsible even for her own personal care. In the light of this evidence it makes no difference whether or not the child had not been in the actual custody of the appellant. It was the welfare and well-being of the child that was at stake.

■ It is common knowledge that the responsibility of caring for a newly born baby is a difficult one and involves strain

and tension, a situation which the testimony clearly shows could not be tolerated by the appellant even if she were out of the hospital. Miss Rathburn, being confined to the state hospital for treatment of her mental condition, could not give proper parental care to her child. There was no place at the hospital where she could be placed and give any parental care to the baby. Furthermore, the medical evidence clearly establishes that the mental illness of Miss Rathburn is of a lasting persistent type with the probability that she would not recover and there was no paternal parent to assume the care and control of the child.

The appellant also contends that the sum total of the state's evidence was that the state could assert its power to keep her in the state hospital and that, because she was subject to this control, this in itself is enough to establish neglect. The record does not show this was the state's position in the Juvenile Court nor is it so claimed here. This assertion is, as appellant says in her brief, "absurd on its face."

The statute does not require that there be a willful act or willful conduct by the parent. Neither does it require that the child be in the physical custody of the parent. As applied to the facts in this case, the lack of proper parental care and control by the mother for the well-being of the child is founded on the absence of her present ability to meet the demands expressed by the statute because of her situation and mental illness. Her condition is such that she presently is unable to give the child proper care necessary for his well-being.

We hold that the circumstances surrounding the mental incompetence of Elaine Rathburn and the specific situation disclosed by the record are sufficient to bring the subject child within the meaning of the statute in question as a "neglected child."

The findings of the Juvenile Court are amply supported by credible evidence and must stand. *Nat'l Grange Mutual* v. *Churchill*, 126 Vt. 428, 432, 234 A.2d 334.

Appellant's second claim of error is the denial of the court to strike the entire testimony of Doctor Thomas Phillips. The ground of the motion was that the witness' testimony had "no bearing whatever and able to support no probative finding of Elaine's condition at this time."

The appellant argues that Dr. Phillips did not meet with Miss Rathburn sufficiently long to support his probative finding of her condition at the time of the hearing. She claims the doctor's testimony that he had visited her two minutes every other week during the previous ten months was an insufficient basis for the doctor's present diagnosis.

The doctor's testimony shows that he spent a great deal of time in 1968 with Miss Rathburn when she first became his patient. At that time he formed a quite definite opinion of what was disturbing her. Again, in January or February 1969, he did a reevaluation of her when she came into the training program and found the same situation existed in her emotional deficiencies. In three years the doctor had done three evaluations on Miss Rathburn and in addition to his further visits with her, he followed the general course of this patient by observations sent in to him to see if there was any change. Even on short visits he could definitely detect if there was any improvement.

The question of the competency of an expert witness is a preliminary matter for the court to decide and the ruling of the trial judge is conclusive unless it is made to appear from the evidence that his decision was clearly erroneous. *Fournier* v. *Burby*, 121 Vt. 88, 93, 148 A.2d 362.

Appellant's argument on the exception is directed solely to the credibility of the witness and the weight to be given to his testimony rather than his qualifications and a proper foundation for the opinions given by Doctor Phillips. The weight of the evidence, credibility of witnesses and the persuasive effect of their testimony is for the trier of fact. *E. Mont. Dev. Corp.* v. *Barre Trust*, 127 Vt. 491, 494, 253 A.2d 131. And expert testimony is to be treated in the same manner as any other testimony by triers of fact and is subject to the same tests as to weight and probative value as non-expert testimony. *Valente, Guardian* v. *Comm. Ins. Co.*, 126 Vt. 455, 461, 236 A.2d 241.

The exception to the court's denial to strike the entire testimony of Doctor Phillips is without merit.

Lastly, the appellant claims it was error to deny her motion to dismiss the petition on the grounds that the state introduced no evidence to prove that she was subject to detention

at the Vermont State Hospital at the time of the hearing under the provisions of Title 18 V.S.A., Chapter 179. Appellant argues that the burden rested on the state to prove the basis of her continued detention at the state hospital.

 The lawfulness of the commitment of Miss Rathburn was not an issue in the case. However, it was established that she had been in legal custody of the state hospital since 1965 under a commitment order of the Probate Court for the District of Lamoille. Having been committed to the state hospital in 1965, her mental illness is presumed to continue until overcome by evidence to the contrary. 29 Am.Jur.2d, Evidence, 290.

The petition raised only the issue of the lack of proper parental care and control necessary for his (child's) well-being due to the mental illness of the appellant. However, as we have said *supra,* there is sufficient and credible evidence which establishes appellant's present mental condition. It clearly demonstrates that the appellant's detention was proper under the statute and was not bottomed on presumptions as she alleges. This exception is overruled.

The action of the Juvenile Court is without error.

*Judgment affirmed.*