# E.J.R. v. William M. Young, Commissioner, SRS

## In re J.R.

[646 A.2d 1284]

Nos. 93-061 and 93-104

Present: Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.

Opinion Filed May 20, 1994

Motion for Reargument Denied June 17, 1994

*Michael Rose*, St. Albans, for Appellant Mother.

*Charles S. Martin* of *Martin & Paolini*, Barre, for Appellant Father.

*Howard W. Stalnaker*, Franklin County Deputy State's Attorney, St. Albans, *Jeffrey L. Amestoy*, Attorney General, Montpelier, and *Alexandra N. Thayer*, Assistant Attorney General, Waterbury, for Appellees.

**Allen, C.J.** E.J.R., the father, and C.R., the mother, appeal orders of the superior and family courts concerning custody of their daughter, J.R. First, they challenge the family court orders finding that J.R. is a child in need of care or supervision (CHINS) and granting custody to the Commissioner of Social and Rehabilitation Services (SRS). Second, the parents contend that the superior court erroneously denied their habeas corpus petition seeking release of J.R. to their custody. We affirm the habeas corpus and CHINS orders, and remand for further findings on the issue of disposition.

With the exception of two findings, the parents concede the extensive recitation of facts contained in the affidavit of an SRS social worker, which details a violent and troubled family history. E.J.R. is the father of five children by two women; C.R. is mother to three of them, including J.R. Hearings to terminate parental rights as to the first four children were concluded on October 23, 1992. J.R. was born on November 17, 1992, and on the same day the State petitioned to have her adjudged a CHINS. Parental rights were thereafter terminated as to the first four children.

An emergency detention hearing was held after the filing of the CHINS petition, and custody of J.R. was transferred to SRS. At the

detention hearing, counsel for the father moved to dismiss, based on the fact that the allegations of child abuse contained in the petition related to other children of the parties, and not to J.R. The same argument was raised at virtually every stage of the proceedings thereafter, and was rejected by the court each time.

The record shows that since 1987, J.R.'s siblings suffered extensive physical and emotional abuse, including a fractured skull, a chipped tooth, numerous unexplained bruises, weight loss, and several hospitalizations. In February 1992, the father threw a dinner plate at his two-year-old child in a fit of rage, resulting in a deep cut five to eight centimeters long on the child's forehead and nose. The father also abused both mothers physically and emotionally. C.R. contributed to the abuse and neglect of the children, and failed to protect them from the father. From 1987 to the filing of the petition to terminate parental rights, the family was offered extensive services, but participation and cooperation with the service providers was sporadic, inconsistent, and almost always terminated by the parents. Neither E.J.R. nor C.R. demonstrated an ability to parent or care for the children adequately. According to a family evaluation performed in April 1992, both parents lacked insight into their problems, and neither demonstrated any motivation to participate in treatment.

In December 1992, while awaiting the CHINS merits hearing in family court, the father petitioned for a writ of habeas corpus in superior court. The mother joined in the petition as an intervenor. The petition alleged that the commissioner of SRS had no authority to exercise custody over J.R., because there was no evidence that the child had been neglected or abused. The superior court disagreed and dismissed the petition. The court found that the petition failed to meet the standards for invoking habeas relief in a child custody situation, that the parents had failed to allege that returning J.R. to them would be in the child's best interest, and that the family court had properly exercised exclusive jurisdiction over the CHINS case. See 33 V.S.A. § 5503(a).

On December 18, 1992, a CHINS merits hearing was held in the family court. The parties stipulated to all but two of the allegations set out in the SRS affidavit. Though executed in the context of the merits hearing, the stipulation did not limit use of the facts to the merits portion of the CHINS proceedings. Based on this stipulation and evidence heard at the hearing, the court concluded that J.R. was

without proper parental care necessary for her well-being because the parents do not have the necessary desire, skills,

attitude, traits and other qualities to adequately care for and protect the child.

The facts are overwhelming that the parents do not *now* have the ability to care for, supervise and provide protection for this child based upon the stipulated facts.

At the subsequent disposition hearing, the SRS disposition report was entered into evidence in its entirety, and the parents offered no evidence. The court issued an order granting custody of J.R. to the SRS commissioner and approving the SRS disposition plan. The parties did not propose or request findings, and the court did not issue any despite its stated intention to do so. The parents appealed the CHINS merits and disposition orders, and the dismissal of the habeas petition; the appeals were consolidated.

## I.

■ The CHINS petition was filed the day J.R. was born, and she was removed from her parents almost immediately. The parents contend that the absence of allegations or proof that they harmed J.R. herself must prevent the family court from declaring the child a CHINS. First, the parents argue that the lack of such proof deprives the court of jurisdiction, but the law says otherwise. Under 33 V.S.A. § 5503(a), the family court has "exclusive jurisdiction over all proceedings concerning any child *who is or who is alleged to be . . . a child in need of care or supervision . . . ."* (Emphasis added.) The statute clearly empowers the family court to hear the CHINS petition, regardless of its merit. See *Howe v. Lisbon Sav. Bank & Trust Co.*, 111 Vt. 201, 207, 14 A.2d 3, 5 (1940) (jurisdiction defined as legal power to hear or determine a cause). Nothing in the record even remotely suggests a problem or defect in the family court's jurisdiction, and therefore the parents' jurisdictional argument fails.

■ Essentially, the parents dispute the merits of the petition, which they believe cannot succeed absent evidence of actual harm inflicted upon J.R. A CHINS action, however, does not depend on allegations of willful acts by a parent. As we stated in *In re Rathburn*, 128 Vt. 429, 435, 266 A.2d 423, 426 (1970), a case involving a mentally ill mother, the central concern in CHINS proceedings is the ability of

---

* Section 5503 refers to the "juvenile court," but 4 V.S.A. § 454(8) provides that the family court shall have exclusive jurisdiction over "[a]ll juvenile proceedings filed pursuant to chapter 55 of Title 33."

the parents to render appropriate and necessary care for the child's well-being. The record in the present matter reflects at least the same degree of likelihood of prospective harm to the child as was present in *Rathburn.*

Actual and completed harmful acts cannot be, and are not, a precondition to a CHINS finding. As the Colorado Supreme Court said in *In re D.L.R.*:

> [T]he record establishes that the mother's condition results in a present inability to care for her child, and that such condition will continue indefinitely. The required statutory showing is therefore satisfied. We further note that a neglect or dependency proceeding is preventative as well as remedial. Under the circumstances of this case, requiring that a child be placed with parents in order to determine whether proper care and control will be provided or that harm would be done to the child, might prove detrimental to the child.

638 P.2d 39, 42 (Colo. 1981). Other states have adopted this approach. See, e.g., *In re Edward C.*, 178 Cal. Rptr. 694, 700 (Ct. App. 1981) (physical abuse of eight-year-old girl created unacceptable danger for six- and nine-year-old brothers because court could reasonably infer that sister's removal would result in abuse of boys); *In re Phelps*, 402 P.2d 593, 595 (Mont. 1965) (physical mistreatment of eleven-year-old boy warranted removal of four-year-old girl from home); *In re W.C.O.*, 370 N.W.2d 151, 153 (Neb. 1985) ("It is not the intent or purpose of the juvenile code to require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction."); *In re Christina Maria C.*, 453 N.Y.S.2d 33, 34 (App. Div. 1982) (brutal treatment of seven-year-old boy warranted finding that one-year-old half-sister was also in "imminent danger of . . . excessive corporal punishment"); *In re K.D.E.*, 210 N.W.2d 907, 910 (S.D. 1973) ("[w]here the trial court has determined that neglect or abuse exists in regard to one child, it is within its discretion to determine the likelihood of abuse of other children in the same family"); cf. *In re D.P.*, 147 Vt. 26, 31, 510 A.2d 967, 970 (1986) (if one child seriously injured through abuse, court not "required to wait until further injuries are inflicted upon its sibling, previously also a victim of abuse, in order to conclude that a substantial change in material circumstances has occurred as to that sibling").

In this case, the family court considered the stipulated facts contained in an extensive, detailed, and chilling affidavit, and decided

that no test period within an abusive environment was necessary to adjudicate J.R. a child in need of care or supervision. The allegations admitted by the father depict a six-year pattern of violence, abuse and neglect. Despite repeated intervention efforts, the father has not shown any signs of developing minimal parenting skills. The psychological assessment indicates that he has longstanding emotional problems, and it is extremely unlikely that future intervention efforts will prove successful.

The mother has long tolerated the violence toward herself and her children, and continues to deny the abusive home environment. She has made negligible progress despite years of intervention and services offered to her. Like the father, the mother suffers from longstanding emotional problems and evidences no insight into her own pathology. It is most unlikely that she would respond to any form of future intervention.

■ Parents cite *In re J.M.*, 131 Vt. 604, 313 A.2d 30 (1973), for the proposition that a CHINS finding may not be based on a pattern of lack of care with respect to a juvenile's siblings absent evidence that the pattern also applies to the juvenile. In *J.M.*, the State presented five neglect petitions relating to the same family, and argued that the pattern of neglect of the four older children sufficed to make the case as to J.M. We held that evidence of lack of care as to the older children did not establish that J.M. had been neglected, because the trial court's findings concerning the cleanliness of the children related to the four older children while attending school, and there was no evidence that those findings applied to J.M. *Id.* at 609, 313 A.2d at 33. But this does not mean that findings as to a particular child cannot ever relate to other children. "Whether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case." *In re D.P.*, 147 Vt. at 30, 510 A.2d at 970. The family court may rely on evidence of the treatment of a sibling in concluding that a child is a CHINS. *In re L.A.*, 154 Vt. 147, 154, 574 A.2d 782, 786 (1990) (citing *In re R.M.*, 150 Vt. 59, 69, 549 A.2d 1050, 1056 (1988)). *L.A.* and *R.M.* dealt with situations involving a pattern of abuse and neglect, and a general inability of the mother to protect any of her children. *L.A.*, 154 Vt. at 154, 574 A.2d at 786; *R.M.*, 150 Vt. at 69, 574 A.2d at 1056. By contrast, as noted in *R.M.*, the evidence in *J.M.* related exclusively to J.M's four siblings, the overcrowded and untidy home environment, and the inability of the parents to provide adequately for all the children. *R.M.*, 150 Vt. at 68, 549 A.2d at 1056.

The present case is like *L.A.* and *R.M.* and unlike *J.M.* The court found that both parents exhibited a pattern of conduct toward children entrusted to their care "substantially departing from the norm." *In re M.B.*, 147 Vt. 41, 43, 509 A.2d 1014, 1016 (1986). In sum, there was more than sufficient evidence strongly linking the treatment of J.R.'s siblings to her own likely future treatment, justifying the order that she is a CHINS.

## II.

■ ■ The family court never entered written findings as part of its disposition order removing J.R. from the parental home. Removal must be based on convincing proof and findings that the parents are unfit and cannot provide an appropriate home, and that separation is in the child's best interest. *Id.* at 45, 509 A.2d at 1017. In this context, "[i]t is crucial that findings indicate to the parties and to this Court, if an appeal is taken, what was decided and how the decision was reached." *Id.* Written findings also clearly indicate how the court selected among the several disposition options available for protection of the child's "'physical, mental and moral welfare.'" *In re L.S.*, 147 Vt. 36, 38, 509 A.2d 1017, 1019 (1986) (quoting 33 V.S.A. § 656(a), recodified at 33 V.S.A. § 5528(a)). Our holding in *M.B.* on the issue of written disposition findings goes beyond what the parties choose to raise in requests for findings, and goes to the solemn responsibility the justice system owes to Vermont citizens when a child is to be removed from the parental home. We cannot agree with the State that the parties' stipulation substituted for their consent to the court's disposition order. The record is clear that the parents opposed commitment of their child to SRS throughout the proceedings.

The matter must be remanded to the trial court for adequate dispositional findings, after which the parties may appeal those findings to this Court as to any issues not adjudicated herein. The order of the trial court is not vacated, but shall remain in full force and effect subject only to any subsequent appeal.

## III.

■ The final issue on appeal concerns the dismissal of the parents' habeas petition. "Habeas corpus is not available as a means of collateral attack based on any error in a juvenile proceeding. . . . [T]he procedural defect in the juvenile proceeding must be 'jurisdictional' such that any order is void." *In re A.S.*, 152 Vt. 487, 492, 567

A.2d 1139, 1142 (1989), *cert. denied,* 493 U.S. 1087 (1990). As we indicated in our merits discussion, there was never any question of the jurisdiction of the family court. The allegations in the SRS petition were not only sufficient to raise the CHINS issue, but if proved, they were overwhelming on the merits. As there was no jurisdictional defect, the habeas corpus petition was properly dismissed.

*The orders of the Chittenden Superior Court dismissing the habeas corpus petition and of the Franklin Family Court adjudicating J.R. a CHINS are affirmed. The matter is remanded to the Franklin Family Court for findings with respect to its disposition order, in accordance with this opinion.*