## In re J.T.S.

[733 A.2d 86]

No. 99-063

June 8, 1999. Father appeals from a disposition decision that transferred custody of his son to the Commissioner of the Department of Social and Rehabilitation Services (SRS). He claims that there was no evidence that transferring custody was necessary to promote the best interests of his son. The State contends that the evidence was sufficient to support the decision, and the juvenile has joined the State's brief. We affirm.

J.T.S. was taken into SRS custody in July 1997, and the parties subsequently stipulated to a finding of CHINS because J.T.S. was beyond the control of his parents. See 33 V.S.A. § 5502(a)(12)(C). J.T.S. has been in residential treatment at the Baird Center since 1997. The first disposition order transferred custody to SRS because it found that residential treatment, as opposed to placement with father, was "'most suited to the protection and physical, mental and moral welfare of the child.'" *In re J.T.S.*, No. 98-315, slip op. at 2 (Vt. Nov. 12, 1998) (quoting 33 V.S.A. § 5528). Father appealed the disposition order. He argued that protective supervision would be more effective than SRS custody in providing the child with residential treatment because the court may condition father's custody on placement at the Baird Center whereas the court is not authorized to make conditions on SRS custody. Because the disposition order did not explain how the court selected among the disposition options under 33 V.S.A. § 5528, we remanded for the court to make further findings and to reconsider its disposition transferring custody to SRS. See *id.*, slip op. at 3.

On remand, the court made additional findings and explained how it selected among the disposition options available. See *E.J.R. v. Young*, 162 Vt. 219, 225, 646 A.2d 1284, 1288 (1994) (court must indicate how it selected among disposition options). The court found again that placement at the Baird Center was necessary to meet J.T.S.'s special needs. Further, the court found that: (1) father has moved several times over the past several years, which has frustrated treatment for J.T.S.; (2) father has never believed that long-term residential programs were necessary to treat J.T.S.'s special needs; (3) father still proposes a home placement with outside services; (4) father views residential treatment as a last resort if home placement does not work; (5) the failure of a home placement could be a serious setback for J.T.S.; (6) an order for protective supervision would leave father free to remove J.T.S. from the Baird Center; (7) state action upon removal would take time, which could be detrimental to the best interests of J.T.S.; and (8) SRS custody would ensure such problems would not arise. Finally, the court concluded that this disposition created the best chance for completion of the residential program and a successful transition to home.

Father appeals again. He first argues that there was no evidence to support the court's conclusion that an order for protective supervision would not be in the best interest of J.T.S. because father would not comply with it. Our review of the court's decision reveals no such conclusion; rather, the court found that the risk of an interruption in residential treatment was greater if father had cus-

tody than if SRS had custody, even if father's custody was conditioned on placement at the Baird Center. Given father's continued commitment to a home placement and the history of father removing J.T.S. from residential treatment when J.T.S. was in father's custody, the court's conclusion that custody with father would create a risk of interruption of treatment was fully supported. Because interruption in treatment would be detrimental to J.T.S., the decision to transfer custody to SRS was necessary for the best interests of J.T.S. See *In re D.B.*, 155 Vt. 580, 587, 587 A.2d 966, 970 (1991) (totality of evidence supported court's rejection of protective supervision and transfer of custody to SRS).

Father contends that this case is unlike *D.B.* because the mother in *D.B.* was violating the truancy law while father here has not violated any law. The decision to transfer custody to SRS in *D.B.* was, however, based on the totality of the evidence, which indicated that: (1) D.B. would not be likely to attend school while living at home; (2) the mother's frequent moves had prevented any solution to the problem; (3) family dysfunction and continued lack of education would likely result in dangerous delinquency; and (4) no feasible plan for protective supervision for a child with very considerable needs had been presented to the court. See *id.* at 586, 587 A.2d at 970. Although the two cases have distinguishing facts, the totality of circumstances in both cases indicate that SRS custody was necessary to adequately address special needs of the child.

Next, father claims that the court violated his constitutional liberty interest in parenting his child by considering father's inability to pay for J.T.S. to stay at the Baird Center in deciding to transfer custody to SRS. It is not clear whether the court relied on father's indigence in determining the disposition in this case. Although the court raises the issue of father's inability to pay for treatment at the Baird Center, it indicates at another point that it is not basing its decision on finances. In any event, we need not reach the constitutional issue because the remainder of the court's findings are sufficient to sustain the court's decision to transfer custody to SRS. See *In re A.F.*, 160 Vt. 175, 178, 624 A.2d 867, 869 (1993) (deletion of unsupported finding did not alter disposition because remainder of court's findings sustained decision).

*Affirmed.*

Motion for reargument denied July 26, 1999.

