*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2013-188

OCTOBER TERM, 2013

| | | |
|---|---|---|
| In re A.W., Juvenile | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Franklin Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 177-12-12 Frjv |

Trial Judge: Martin A. Maley

In the above-entitled cause, the Clerk will enter:

Mother appeals a family division order concluding that her son, A.W., is a child in need of care or supervision (CHINS). Mother argues that the court's finding regarding A.W.'s medical prognosis was not supported by medical testimony and that the evidence does not support a CHINS finding. We affirm.

The trial court found the following. A.W., born in September 2006, first came to the attention of the Department for Children and Families (DCF) in March 2012 after DCF received reports that mother was living with a man who has an extensive history of violent offenses and substance abuse and whose own children were taken into DCF custody based on abuse and neglect. In November 2012, DCF learned that A.W. had been diagnosed with a brain tumor and had recently undergone emergency surgery to remove the tumor at Fletcher Allen Health Care (FAHC) in Burlington. The next step in A.W.'s treatment was specialized radiation therapy at a hospital in Boston. This treatment was scheduled to begin on Monday, December 31, 2012. Mother was informed by social workers that she needed to make arrangements for transportation to Boston and housing there for her and A.W. Beginning on November 27, a social worker informed mother that to receive approved transportation and housing she was required to obtain a report from a mechanic that her vehicle was not safe to drive to Boston and a note from a pediatrician explaining A.W.'s condition and confirming the need for adequate housing. Mother met with DCF on December 26, 2013 and reported that she was overwhelmed by the amount of arrangements. By December 27, 2012, mother had not provided the necessary documents, and housing and transportation were not confirmed.

On Friday, December 28, 2012, the State filed a petition for an emergency care order, and alleged that A.W. was CHINS. In support, DCF cited concerns about mother's lack of urgency in her response to A.W.'s medical diagnosis, mother's failure to make arrangements for A.W.'s treatment in Boston, and mother's boyfriend's history. On the same day the petition was filed, mother received confirmation that transportation and housing in Boston had been approved. Mother provided that information to DCF after the emergency care order had issued.

The court held a contested CHINS hearing over two days in April 2013. Following the hearing, the court found that A.W. was CHINS at the time the petition was filed because there was a substantial risk of harm to A.W. if he failed to timely receive adequate health care. The court found "mother failed to act in a timely manner to assure that [A.W.] would receive the necessary treatment." The court acknowledged that mother did make the necessary arrangements to bring A.W. to Boston for his treatment, but concluded that this was not done "in a reasonable time given the gravity of the situation." Mother appeals.

A child is CHINS if he or she is "without proper parental care or subsistence, education, medical, or other care necessary for [the child's] well-being." 33 V.S.A. § 5102(3)(B). As we have explained, the family court must determine, as a matter of fact, if a child is "without proper 'parental' care," such that his or her "well-being is threatened." In re G.C., 170 Vt. 329, 334 (2000). We review the family court's findings for clear error, and thus, we will not disturb its findings unless they are unsupported by any credible evidence. In re M.B., 162 Vt. 229, 233, 239 (1994). Moreover, it is for the trial court, not this Court, to "determine the credibility of the witnesses and weigh the persuasiveness of the evidence." Cabot v. Cabot, 166 Vt. 485, 497 (1997).

On appeal, mother first argues that the court's CHINS determination rests on findings about the standard of care for treating A.W.'s condition, and the consequences of failing to follow that standard, that are not supported by competent medical testimony. At the CHINS hearing, the court heard testimony from mother, the foster mother, the DCF caseworker, social workers from hospitals in Vermont and Boston and a billing coordinator for the transit company. A.W.'s health-care providers did not testify. Mother contends that the medically correct treatment for a brain tumor and the prognosis for recovery are matters that are sufficiently complex as to require expert testimony, which the State did not offer in this case. According to mother, there was no competent evidence on the exact time frame within which follow-up treatment was required after the surgery, nor on the question of what A.W.'s prognosis would be in the absence of timely radiation therapy.

The State responds that the accuracy of the medical diagnosis and correctness of the treatment plan are not at issue and therefore there is no shortcoming in the evidence. The State emphasizes that the important point is that mother was given the information regarding A.W.'s recommended treatment plan and did not respond with the required urgency.

We agree with mother that the necessity and timing of the radiation therapy, and its significance for A.W.'s health and recovery, were important considerations to the trial court in making its CHINS decision. The court found that A.W. was at risk of harm due to mother's failure to act quickly enough to assure A.W.'s treatment. Nonetheless, we conclude that there are no grounds for reversal. Although mother objected to some statements regarding A.W.'s treatment plan on the basis of hearsay, other testimony regarding A.W.'s need for radiation therapy and the critical timing of that therapy was admitted without an objection by mother. See In re M.P., 133 Vt. 144, 146 (1975) (explaining that in juvenile proceeding "even uncorroborated hearsay evidence may support a factual finding if admitted without objection").

For example, in answer to questioning by the State, the DCF caseworker explained the treatment plan for A.W. She stated that A.W. needed a specific type of radiation that usually

2

should begin within thirty-one days from the time the tumor is removed, and that treatment would continue for six weeks. This treatment was scheduled to begin on December 31 in Boston. A.W. was then supposed to have chemotherapy weekly at FAHC. In answer to the question of why DCF filed the petition, the social worker explained that representatives at both FAHC and the Boston hospital expressed concern that if A.W. did not receive his treatment in a timely manner, it would not have the same effectiveness. The social worker also testified that if plans were not in place ahead of time for appropriate housing, then treatment would be denied in Boston. There was no objection to her testimony.

Thus, even if we reversed the trial court's ruling allowing hearsay testimony by the social worker from the Boston hospital representatives concerning the standard treatment for A.W.'s condition and the urgency of starting by December 31, the trial court had ample unchallenged testimony to support its conclusion that the child faced a risk of harm if he did not undergo the follow-up treatment within thirty-one to thirty-five days of the surgery. If this were a case in which there was a bona fide dispute about the recommended follow-up treatment or the seriousness of the child's medical condition, we might conclude that the testimony, while properly admitted in the absence of an objection, was entitled to only minimal weight in the trial court's analysis. However, on the record of this case, the trial court did not err in crediting the testimony.

Next, mother argues that the CHINS adjudication is unsupported by the evidence. Mother claims that the entire petition was based on mother's failure to arrange housing in, and transport to, Boston, but that on the same date the petition was filed mother in fact made those arrangements. The court acknowledged that mother had submitted the necessary documents and received approval for transport and housing, but explained that mother's delay in doing so had created a substantial risk of harm that A.W. would not receive necessary treatment for his serious diagnosis.

We conclude there was no error. The court correctly focused on the "likelihood of prospective harm to the child." See E.J.R. v. Young, 162 Vt. 219, 223 (1994) (explaining that "actual and completed harmful acts" are not a precondition to a CHINS finding because dependency proceedings are preventative as well as remedial in nature). The petition was concerned specifically with mother's failure to make the necessary arrangements prior to the Boston trip, but also more generally with mother's lack of urgency in responding to A.W.'s very serious condition. By November 27, mother knew that she had to make a host of arrangements to ensure that A.W. could begin the necessary treatment in Boston by the end of December, but—perhaps because she was overwhelmed by the circumstances and the long list of things to do—she was slow to take the necessary steps. By December 27—only four days before the treatment was to begin—her transportation to Boston and housing in Boston were still not in place. Under these circumstances, we cannot conclude that the trial court abused its discretion in concluding that A.W. was a child "without proper parental care or subsistence, education, medical, or other care necessary for [his] well-being." 33 V.S.A. § 5102(3)(B).

We emphasize the limits of our holding. The question before the trial court, and before this Court on appeal, is whether, at the time the State filed its petition, A.W. was a child in need of care or supervision. See 33 V.S.A. § 5315(a) (purpose of hearing on the merits of a petition is for state to prove allegations that child is in need of care or supervision); see also In re D.T., 170

3

Vt. 148, 156 (1999) (explaining that the purpose of the merits hearing is to determine whether "at the time of the filing of the petition, the juvenile is a child in need of care and supervision"). Given the urgency of his impending medical appointment, the reasonable uncertainty about mother's wherewithal to ensure that A.W. would receive timely follow through on the treatment, and the questions about mother's capacity at that moment in time to meet A.W.'s imminent medical needs alongside her responsibilities to her other children and the financial and logistical challenges she faced, the trial court's ruling was within its discretion. We do not address the question of whether, on the basis of the facts found by the trial court, sustained removal of A.W. from his parents' care would be an appropriate disposition in this case.

Affirmed.

BY THE COURT:


_____
John A. Dooley, Associate Justice


_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice