*Note:  Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-295

DECEMBER TERM, 2014

| | | |
|---|---|---|
| In re C.C., C.C. and B.C., Juveniles | } | APPEALED FROM: |
| | } | |
| | } | Superior Court, Bennington Unit, |
| | } | Family Division |
| | } | |
| | } | DOCKET NO. 92/93/94-9-13 Bnjv |

Trial Judge: David Howard

In the above-entitled cause, the Clerk will enter:

Father appeals the court's order adjudicating his children, Cha.C., Che.C., and B.C. as children in need of care or supervision (CHINS).  Father argues that the evidence does not support the court's findings about father's actions or that those actions amounted to abuse.  Father further contends that his treatment of one child is not sufficient to support a CHINS adjudication for the other children.  We affirm.

Father and mother have twins, Cha.C. and Che.C., a boy and a girl, respectively, born in May 2013, and another son B.C., born in August 2009.  Based on allegations that father had abused Cha.C., as well as allegations concerning mother that are not relevant to this appeal, the Department for Children and Families (DCF) filed a petition alleging all three children were CHINS.

The trial court held a contested hearing over two days.  Based on the evidence, the court found as follows.  The conduct supporting the CHINS petition took place while mother, father, and their children were visiting friends in September 2013.  Mother and her friend Mary left the friends' home to go to the store, leaving father to care for the children.  At the time, there were several other individuals also at the house, including Mary's adult brother Philip, and Mary's son, H.N., who was in second grade.  Both H.N. and Philip observed father treat the male twin Cha.C. in a manner that concerned them.  Philip, who had been friends with mother and father for many years, heard Cha.C. crying and saw father lift the infant from a car seat so the child's head hit the ceiling.  Philip then watched father throw Cha.C. down on a bed.  H.N., who was on the bed, observed Cha.C. drop from a distance of twelve to sixteen inches and felt the bed move when the baby hit the bed.  Philip also witnessed father hold the child and vigorously rock him in an angry manner.  Philip stated that father was frustrated and angry at the time, and that father made a remark about not liking being left in charge of the children.

Philip immediately told his mother, who was also at the home.  When Mary told mother through text messages about what Philip had seen, mother indicated that she was aware father

was too rough with the infants and she had concerns for their safety. However, she defended father, and indicated that she would not contact police. Eventually DCF and police became involved. When father was confronted about what happened, he admitted to being frustrated and generally to acting in the manner described by Philip and H.N., but the details about the amount of force he had used differed. Father has a conviction for domestic assault against mother from 2010.

The trial court found that there was clear and convincing evidence to support a finding of CHINS, both because the child lacked proper care, see 33 V.S.A. § 5102(3)(B), and on account of abuse, see id. § 5102(3)(A). Although the court was concerned about the fact that Cha.C.'s head hit the ceiling, it did not find that that action alone would support a CHINS finding. However, the court concluded that father had tossed or thrown the child to the bed with excessive force, posing a risk of injury to the child. The court found that father's actions were done out of anger and frustration, more abusive than father admitted, and put Cha.C. at risk of harm. The court explained that although the evidence focused on the male twin, there was sufficient evidence to demonstrate that all three children were at risk of harm from father. Based on mother's statements about father's treatment of the children and her lack of action to protect them, the court also found that the other children were at risk because mother demonstrated that she would not protect the children from father's anger and stress. The court adjudicated all three children as CHINS. Father appeals.

A juvenile may be adjudicated as CHINS when, among other things, the child "has been . . . abused by the child's parent" or is "without proper parental care . . . necessary for his or her well-being." 33 V.S.A. § 5102(3)(A), (B). On appeal from a CHINS adjudication, this Court will uphold the family court's factual findings unless clearly erroneous and its legal conclusions if supported by the findings. In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508.

Father first argues that three of the court's findings regarding father's treatment of Cha.C. are not supported by the evidence. Father first claims that there was no evidence to demonstrate that Cha.C.'s head "hit" the ceiling when father lifted him out of his car seat because there was no sound of contact and no evidence of injury at the likely place of impact. Philip testified that he saw father lift the baby up and "hit its head off the ceiling." Further, an investigating detective testified that three days later Cha.C. had a red mark on his forehead just below the hairline. Although father contends that the location of the red mark does not coincide with Philip's testimony regarding the point of impact, whether the impact caused the red mark was not part of the court's finding. The court simply found that father had caused the baby's head to "hit" the ceiling, and Philip's testimony supported this finding. Moreover, the court carefully explained that the action of lifting the child so his head hit ceiling did not alone demonstrate that Cha.C. was abused and without proper parental care, since it could have been accidental and there was limited evidence that it was done with any force. The court noted, though, that the evidence that the father hit the child's head against the ceiling reinforced that father undertook his next action—throwing the child onto the bed— out of anger and stress. The combination of the acts is what showed that Cha.C. was at risk of harm.

Second, father contends that the evidence does not demonstrate that his rocking posed a risk of danger to the infant. Philip testified that father was shaking the baby in "a bad way" and

was mad at the time. This testimony was sufficient to support the court's finding that father "vigorously" rocked the child. Like hitting the child's head on the ceiling, the court did not find that this rocking in isolation posed a risk of harm to the child. It was only in combination with father's other acts.

Third, father claims that the evidence does not support the court's finding that Cha.C. landed on the bed "with enough force to make the bed bounce or react" and resulted in the infant crying. Philip testified that father "threw" Cha.C. on the bed. H.N. stated that he was on the bed and he saw a baby falling and felt the bed go up and down. H.N. further stated that after the baby landed on the bed, he cried. This testimony fully supports the court's findings that father threw Cha.C. on the bed with enough force to make the bed move and that at that point Cha.C. cried.

Father next argues that the evidence does not support a finding of CHINS based on abuse or lack of proper parental care. As set forth above, the court's adjudication was based on its findings that father used excessive force when he "tossed or threw" Cha.C. on the bed because this action posed a risk of injury to the child. In addition, the court found that father acted out of anger and stress and that the combination of father's other acts—vigorously shaking Cha.C. and roughly handling Cha.C. so his head hit the ceiling—put Cha.C. at risk of harm.

We need not reach the question of whether these actions were sufficient to demonstrate that father abused Cha.C. because the evidence plainly supports the court's conclusion that Cha.C. was CHINS for lack of proper parental care. As we have explained, "the central concern in CHINS proceedings is the ability of the parents to render appropriate and necessary care for the child's well-being." E.J.R. v. Young, 162 Vt. 219, 222-23 (1994). While the child may not have been injured at the time by father's actions, such injury was not a necessary prerequisite to the CHINS adjudication, which can be shown based on the "likelihood of prospective harm to the child." See id. at 223 (explaining that "[a]ctual and completed harmful acts" are not a precondition to a CHINS finding because dependency proceedings are preventative as well as remedial in nature). The evidence demonstrated that father acted out of anger and handled the child roughly. Such action posed a future risk of harm to the child and was sufficient to support the court's finding that Cha.C. was CHINS for lack of proper parental care.

Finally, father argues that even if the evidence is sufficient as to Cha.C., it does not establish that his other two children are CHINS. Father contends that there was no evidentiary basis for the court's finding that the other children were just as likely to suffer from father's anger and frustration. We conclude there was no error. We have long held that the family court can determine "on the facts of each case whether the treatment of siblings is probative of neglect or abuse of a juvenile under the court's consideration." In re K.B., 154 Vt. 647, 647 (mem.). Here, the court did not err in considering father's treatment of C.C. as relevant to whether the other two children were at risk of harm. The evidence demonstrated that father acted out of anger and frustration in his treatment towards Cha.C. Given the absence of any evidence that Cha.C. was particularly likely to be the recipient of father's anger, such treatment could have easily been directed at Cha.C.'s twin sister, Che.C. or his four-year-old brother, B.C.

Moreover, other findings supported the court's conclusion that all of the children lacked proper parental care. The trial court pointed to mother's expression of concern about how father treats the children and her worry that he will harm them, as well as her refusal to admit that father had done anything wrong despite this concern, to support its conclusion that mother would not protect any of the children adequately from their father's anger or stress. This sufficed to demonstrate that all the children lacked proper parental care because they were just as likely to be recipients of father's anger and mother was unable to protect them from harm.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice