*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2014-446

APRIL TERM, 2015

In re N.R. and L.B., Juveniles
                }    APPEALED FROM:
}
}    Superior Court, Windsor Unit,
}    Family Division
}
}    DOCKET NO. 107/108-6-14 Wrjv

Trial Judge: Harold E. Eaton, Jr.

In the above-entitled cause, the Clerk will enter:

Mother appeals from a family court order adjudicating the minors N.R. and L.B. to be children in need of care and supervision (CHINS). Mother contends the evidence was insufficient to show that she harmed the children or placed them at risk of harm. We affirm.

This case arose when the Department for Children and Families (DCF) filed a CHINS petition on June 6, 2014 as to the minors L.B., who was then just two days old, and N.R., his older sister, who was nearly seven. The court held a merits hearing over the course of two days in August and September 2014 and issued a written decision, granting the petition and adjudicating the children to be CHINS, in October 2014. The court's findings, and the record evidence, may be summarized as follows.

Mother has a lengthy history with DCF. Her parental rights to three older children were terminated by court order in June 2006, although evidence relating to that judgment was not introduced and the trial court accordingly gave it no weight in this proceeding. More recently, two cases concerning N.R. were opened, one in 2011 and a second in 2013. The 2011 matter involved a sexual assault of N.R., who was then four years old. The assault was committed by a friend of mother's boyfriend. The perpetrator was subsequently convicted of sexual assault. Mother did not immediately notify the police of the assault and resisted DCF's recommendation to obtain counseling for N.R., who was experiencing fears relating to the assault. Mother told the therapist in front of N.R. that counseling was unnecessary, that she was there only because DCF required it, and that it was best for N.R. to forget about the assault. Although the therapist believed that it was benefiting N.R., mother terminated the counseling in 2013.

The second DCF case resulted from a June 2013 incident, in which mother was charged with domestic assault against her boyfriend. The investigating officer found mother to be in a highly volatile and hostile state; she slipped out of her handcuffs several times, threatened emergency services personnel, and grabbed a bottle of windshield washer fluid and drank from it before being restrained. The child's paternal aunt subsequently called DCF to express concerns about mother's emotional stability, her statements expressing extreme hostility and threats

toward DCF personnel, and plans to move to a secret location with N.R to avoid DCF involvement.

While mother was in the hospital for L.B.'s birth in June 2014, a birthing-center nurse observed that mother was often agitated and made threats against DCF and hospital personnel. When mother became agitated, she was unable to cope with the baby. The nurse heard mother state that crying babies frustrated her, that she hated children, and that she was going to run away with her children so that DCF could not find them. A visiting nurse who attended to mother almost daily during the last six weeks of her pregnancy observed that mother often seemed angry, upset, and disconnected from the baby; made a statement to the effect of "I have a life, brat"; and threatened to have the baby on the kitchen floor. A social worker with DCF who met with mother the day after L.B. was born recalled mother stating that she hated children and threatening to flee the state to avoid DCF involvement. About one week later, mother tested positive for marijuana.

A Family Time coach from Easter Seals who worked with mother following L.B.'s birth recalled that mother often made hostile remarks about DCF social workers while N.R was present, stating that they were evil and stole children and sold them to the highest bidder on the black market. Mother told N.R. not to talk with social service providers, used extensive profanity during visits, and made threats of physical harm to DCF social workers. While agitated, mother's attention to the children waned. During one visit in July 2014, mother specifically threatened the Easter Seals coach, threatened to follow workers home and set their houses on fire, and threatened to hurt her DCF social worker. While the children were present, mother referred to obtaining guns and hurting people, comments that the Family Time coach believed were emotionally harmful for N.R.

Mother testified that she had sought counseling for mental health issues and denied most of the allegations that she threatened social service providers or engaged in threatening behavior in front of the children. The trial court found that mother's testimony in this regard was not credible.

Based on the foregoing, the trial court found that, while there was no showing that mother had acted on her numerous threats of harm or subjected the children to physical abuse, there was ample evidence that she had exhibited bizarre and emotionally volatile behavior and unpredictable mood swings, and had made bizarre, threatening, and improper statements—particularly against service providers—in front of the children. The court found that, when thus agitated, mother was not responsive to the needs of the children; that her ability to provide the children with essential emotional support and stability was lacking; and that her extreme hostility and distrust of all service providers had been harmful to the children by undermining their opportunity to access services. The court thus found clear and convincing evidence to support an adjudication of CHINS based on mother's failure to provide proper care necessary for the children's well-being. This appeal followed.

A child is in need of care and supervision when, among other possible situations, he or she "is without proper parental care or subsistence, education, medical or other care necessary" for the child's well-being. 33 V.S.A. § 5102(3)(B). "When reviewing a CHINS decision, we

2

uphold the court's factual findings unless clearly erroneous and the court's legal conclusions when supported by those findings." In re D.D., 2013 VT 79, ¶ 34, 194 Vt. 508.

For the most part, mother has not challenged the court's underlying factual findings. Instead, she claims that the evidence and findings were simply insufficient to support the CHINS adjudication because they did not show that she physically or emotionally harmed the children, and "[d]ue to this lack of evidence, the State could not show that there was a potential risk of harm to N.R. or L.B." The argument is contrary to well-settled law that the State does not "need to establish actual harm" to support a CHINS adjudication. In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637; see also E.J.R. v. Young, 162 Vt. 219, 223 (1994) (explaining that "[a]ctual and completed harmful acts cannot be, and are not, a precondition to a CHINS finding"). Nor is there any support for mother's additional claim that the "only way" the State could show a "potential for harm" is through "a pattern of prior abuse or neglect" based on the earlier adjudication terminating mother's parental rights to her three older children in 2006, which the court here declined to rely on. The record evidence of mother's erratic and highly concerning behaviors in this case was more than sufficient to raise a prospective concern for the children's welfare.

Mother also devotes considerable argument to distinguishing the gravity of the harm or risk of harm presented here from other cases upholding CHINS adjudications. Thus, she asserts that, unlike the parent in In re Rathburn, 128 Vt. 429, 433 (1970), mother does not have a specifically diagnosed mental illness and is not in need of constant supervision; that unlike the child in In re D.D., 2013 VT 79, ¶ 36, the children here do not have serious medical conditions requiring constant attention; that unlike the parents in In re J.F., 2006 VT 45, ¶¶ 2-5, 180 Vt. 583 (mem.), a termination-of-parental-rights case, she did not socially isolate and medically neglect her children to point that it seriously threatened their health; and that unlike the parent in In re M.A., 2012 VT 103, ¶ 11, 193 Vt. 665 (mem.), she did not coach the children to make false allegations of sexual abuse.

Mother also claims that this case is unlike others where the potential for harm was "real and severe," citing Young, 162 Vt. at 219-21, where the risk to a newborn was based on severe injuries to four older siblings; In re G.C., 170 Vt. 329, 330-34 (2000), where the mother's "unstable psychiatric history" and dependence had led to an earlier termination of parental rights and supported a CHINS finding as to a younger child; and In re J.B., 167 Vt. 637, 637-39 (1998) (mem.), a termination-of-parental-rights case, where a younger child was found to be CHINS based on repeated sexual abuse of an older sibling.

While the circumstances in other cases may be informative, whether a child is CHINS "is a question of fact, . . . and each case must be determined on its own facts." In re G.C., 170 Vt. at 334 (alteration in original) (quotation omitted). Thus, the critical question is not—as mother asserts—whether the circumstances in other cases were "much more serious" or whether her actions here were "paltry in comparison," but whether the facts here were sufficient to support a conclusion that mother was unable to provide proper care for the children's well-being.

Thus, the sufficiency of the evidence to support the CHINS adjudication must be determined on its own merits. As summarized earlier, that evidence demonstrated mother's profound mood swings and "bizarre and unpredictable" behaviors which supported the court's

3

conclusion that she could not provide for the emotional welfare of the children. Although, as noted, mother argues that her conduct and the resulting risks to the children are not as egregious as those shown in some other CHINS cases, she does not demonstrate that the court's concerns here were unsupported or unreasonable. That mother never physically harmed the children, nor acted on her often-expressed threats, does not undermine the court's finding that her profound emotional instability undermined her ability to provide adequate care for the children's well-being, which was sufficient in turn to support the CHINS adjudication. Therefore, we find no basis to disturb the judgment.

Affirmed.

BY THE COURT:

_____
Paul L. Reiber, Chief Justice

_____
John A. Dooley, Associate Justice

_____
Beth Robinson, Associate Justice