Robinson, J.,
¶ 14. dissenting. I don’t disagree with the majority’s characterization of the applicable law in this case, but do disagree with the majority’s holding that the trial court’s findings support its conclusion that J.C. and T.F. were CHINS. I would remand to the trial court for further findings.
¶ 15. The applicable law is uncontroversial: it requires a distinct determination that a child is without proper parental care with respect to each child subject to a CHINS petition, but does not necessarily require a finding that the child has suffered actual harm; and it allows but does not require a factfinder, in appro *198 priate circumstances, to infer that a parent’s conduct toward one child reflects a risk to the other.
¶ 16. With respect to the first point, this Court has explained, “the focus of a CHINS proceeding is the welfare of the child.” In re B.R., 2014 VT 37, ¶ 13, 196 Vt. 304, 97 A.3d 867 (quotation omitted). Accordingly, the family division should focus on the child’s welfare rather than on the respective unfitness of each parent. Id. ¶ 14; see also 33 V.S.A. § 5315(a) (“At a hearing on the merits of a petition, the State shall have the burden of establishing by a preponderance of the evidence that the child is in need of care and supervision.” (emphasis added)). Moreover, the question before the court is “whether, given all of the circumstances, the child is without proper parental care, such that the child’s well-being is threatened.” In re G.C., 170 Vt. 329, 334, 749 A.2d 28, 32 (2000) (internal quotations omitted). Actual harm is not a prerequisite to a CHINS finding. In re L.M., 2014 VT 17, ¶ 29, 195 Vt. 637, 93 A.3d 553.
¶ 17. Concerning the second point, this Court has explained that “ ‘[wjhether treatment of one child is probative of neglect or abuse of a sibling must be determined on the basis of the facts of each case.’ ” E.J.R. v. Young, 162 Vt. 219, 224, 646 A.2d 1284, 1287 (1994) (quoting In re D.P., 147 Vt. 26, 30, 510 A.2d 967, 970 (1986)). Where evidence reflects “a pattern of abuse and neglect, and a general inability of [a parent] to protect” any of the children, the family division “may rely on evidence of the treatment of a sibling in concluding that a child is a CHINS.” Young, 162 Vt. at 224, 646 A.2d at 1287. In Young, this Court considered a neglect petition concerning a newborn child whose four older siblings had been the subject of hearings to terminate parental rights that concluded a month before the newborn’s birth. Id. at 220, 646 A.2d at 1285. Based on evidence that the parents “exhibited a pattern of conduct toward children entrusted to their care substantially departing from the norm,” this Court concluded that “there was more than sufficient evidence strongly linking the treatment of J.R.’s siblings to her own likely future treatment, justifying the order that she is a CHINS.” Id. at 225, 646 A.2d at 1287 (quotation omitted).
¶ 18. On the other hand, where evidence that supports a CHINS determination with respect to one child is not probative of the risk of harm to another, that evidence may not support a CHINS determination as to the second child. See, e.g., In re J.M., *199 131 Vt. 604, 608-09, 313 A.2d 30, 32-33 (1973). In J.M. the trial court considered five neglect petitions relating to a set of siblings. The court’s neglect determinations concerning the four older children were not appealed. The evidence reflected generally that the children lived in an overcrowded and untidy home. The trial court’s findings concerning the cleanliness of the children were supported by evidence relating to the four older children while attending school. This Court held that that evidence could not support a finding that the six-month old child was neglected. Id. at 608-09, 313 A.2d at 32-33. While evidence of a parent’s conduct toward one sibling may support an inference about the risk faced by another sibling, that inference is not automatic. The evidence in a particular case must support the inference that the parent’s conduct toward one child reflects or gives rise to a threat of harm to the other. See also In re M.K., 2015 VT 8, ¶ 6, 198 Vt. 233, 114 A.3d 107 (noting that trial court found that mother’s abusive action toward one child “stemmed from her frustration at not being able to control a rowdy five-year old,” and that “at this stage of his life, the younger child was not at immediate risk of being subjected to the same kind of conduct”).
¶ 19. Applying these principles to the trial court’s findings, I cannot agree that those findings support the conclusion that J.C. and T.F. are CHINS. The trial court’s findings concerning mother’s horrific treatment of K.P. emphasize K.P.’s unique position in the household, and fail to provide a bridge from mother’s treatment of K.P. to the risks faced by the other children. Nor can I join in the majority’s refraining of the trial court’s decision.
¶ 20. The trial court’s findings paint a picture of a vulnerable and unwelcome stepchild who is singled out for shocking mistreatment by mother. The trial court found the following. A witness from the Department for Children and Families described mother admitting to putting a backpack on K.P, telling K.P. that she was not welcome any more, and leaving her in the hallway outside the apartment for an hour; that she had not given K.P. a drink in two days because the child needed to learn a lesson because the child had been getting up in the middle of the night to “steal food” from the refrigerator; that K.P. was no longer allowed to have a bed in her room because she was deliberately urinating and defecating on the bed; and that K.P. was required to sit on the floor rather than the furniture, while the other children were allowed to sit on the furniture. The witness saw mother “singlet ] *200 out [K.P.] for disparate treatment” by requiring K.P. to stand in the corner for pretending to be a cat even though J.C., who was playing with her, was not punished. Finally, the witness reported that mother stated that she wanted to put K.P. on the street, wanted to let DCF take her, and “-wanted to be the next one on T.V. for killing a kid.”
¶ 21. A different social worker testified about mother’s reports of stress with K.P. Mother said that she did not want K.P, but that the child “came with the marriage.” Mother described K.P. as an odd child who did not act like a normal child, who ate more food than they could afford to feed her, and who, as a result of toileting issues, required pull-ups that they could not afford. That social worker also saw mother “treat K.P. differently than the other children” during the social worker’s visit to the home.
¶ 22. On the basis of these findings, the trial court concluded that mother’s treatment of K.P. supported a CHINS finding as to J.C. and T.F. In particular, the court found that K.P. suffered emotional and physical abuse at the hands of mother. The court elaborated, explaining that the child came to the home suffering symptoms relating to possible prior trauma, mother was overwhelmed by K.P.’s behavior and ill-equipped to address her needs, mother resented having to care for K.P, and mother stigmatized the child within the family. The court then addressed the critical question in this case involving J.C. and T.F.:
The issue is whether [mother’s] disparate and cruel treatment of K.P. also renders her biological children, J.C. and T.F., children in need of care and supervision. The Court finds that it does. Further, [mother’s] treatment of K.P, and her insensitivity and callous disregard for K.P.’s well-being speak to the general need for parenting education.
¶ 23. Ordinarily, the leap from a parent’s gross mistreatment of one child to the risk of harm faced by another would not be particularly great, especially where the evidence reflects “a pattern of abuse and neglect, and a general inability of [a parent] to protect” any of the children. Young, 162 Vt. at 224, 646 A.2d at 1287. But in this case, the repeated emphasis in the findings on K.P.’s unique position — she was a stepchild with significant behavioral challenges who was intensely unwanted by mother — and on the fact that mother singled out K.P. for disparate *201 treatment relative to J.C. and T.F., undermines the inference that mother’s abuse of K.P. reflects a broader pattern that signals a risk of abuse for J.C. and T.F. Under these circumstances, the trial court’s findings do not connect the dots between mother’s cruel treatment of K.P. and its CHINS determinations with respect to the other children. See In re M.B., 147 Vt. 41, 45, 509 A.2d 1014, 1017 (1986) (“It is crucial that findings indicate to the parties and to this Court, if an appeal is taken, what was decided and how the decision was reached.”); see also In re J.M., 172 Vt. 61, 69, 769 A.2d 656, 663 (2001) (holding conclusory statement not “adequate to explain how the court weighed the evidence and reached the conclusion it did”).
¶ 24. The majority addresses the limitations of the trial court’s findings by reshaping its rationale. It characterizes the trial court’s decision as resting on the “agitated and unstable environment in which K.P.’s abuse occurred.” Ante, ¶ 12. It points to the evidence that mother’s cruelty occurred in some circumstances in which all three children were present and in which mother “exhibited a high level of stress and agitation.”
¶ 25. I reject the majority’s approach for two reasons. First, the majority is reframing the trial court’s findings and interposing its own assessment of the record. The trial court’s findings focus almost entirely on mother’s mistreatment of K.P, who was not the subject of the CHINS petitions before the court. The court specifically posed the question of whether mother’s disparate and cruel treatment of K.P. also renders her biological children CHINS, and, with no further explanation, answered in the affirmative. In articulating the unstated connection between mother’s abuse of K.P. and the other children, the majority supplies its own explanation that is not reflected in the trial court’s analysis.* See In re M.M., 2015 VT 122, ¶ 12, 200 Vt. 540, 133 A.3d 379 (“It is not our role to second-guess the family court or to reweigh the evidence.” (quotation omitted)).
*202 ¶ 26. Second, absent mother’s mistreatment of K.P., the trial court’s findings of a generally chaotic household, an overwhelmed mother, and a single incident in which mother grabbed J.C. by the arm and seated her on the couch with no finding that mother’s actions involved an unreasonable degree of force, would not come close to supporting the conclusion that J.C. and T.F. are CHINS. See id. ¶ 12 (“A child is CHINS if he or she ‘is without proper parental care or subsistence, education, medical, or other care necessary for his or her well-being.’ ” (quoting 33 V.S.A. § 5102(3)(B))). Nor does a parent’s “general need for parenting education” trigger a CHINS determination. If these children are CHINS — and I conclude that the record could support a CHINS determination with the proper factual findings — it’s primarily because of the risk of harm to the children arising from mother’s repeated and callous abuse of K.P. in their presence, not because of the general atmosphere in which that abuse happened to take place.
¶ 27. The trial court’s findings with respect to mother’s treatment of K.P. were thoughtful and thorough, but the court’s explanation of the link between that conduct and the risk faced by the other children was conclusory. The evidence in this record could support a CHINS determination with respect to J.C. and T.F., but the court’s findings do not compel such a determination as a matter of law. I would remand this case for additional findings by the trial court.

 In fact, the trial court’s analysis regarding the other children consists of one conclusory paragraph. The trial court’s decision goes to great lengths to detail the abuse of K.R But, as the trial court admits, “[t]he issue is whether [mother’s] disparate treatment of K.P. also renders her biological children ... in need of care and supervisión.” In an eight page opinion and order, a whole six and a half pages are dedicated to analyzing K.P. The trial court devotes a mere paragraph to the children actually under review. While the abuse of K.P is deplorable, the trial court needed findings to support its conclusion the other two children were CHINS. Those findings are missing from the record.