2015 VT 8

### In re M.K., Juvenile

[114 A.3d 107]

No. 14-288

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed January 9, 2015

234

*Matthew F. Valerio*, Defender General, and *Sara Puls*, Appellate Defender, Montpelier, for Appellant Mother.

*William H. Sorrell*, Attorney General, and *Bridget C. Asay*, Assistant Attorney General, Montpelier, for Appellee State.

*Michael Rose*, St. Albans, for Appellee Juvenile.

¶ 1. **Eaton, J.** Mother appeals an order of the superior court, family division, finding that her five-year-old son, M.K., is a child in need of care or supervision (CHINS) based on a single incident of abuse. She argues that the CHINS determination must be reversed because the evidence was insufficient to prove the allegation of abuse. We affirm.

¶ 2. The incident in question occurred on Easter Sunday, April 20, 2014, at an apartment complex that mother had just moved into with her two sons. On that morning, a tenant at the complex observed the incident and reported it to the property manager, who looked at a surveillance video from a camera located near where the incident occurred. After watching the video, the property manager contacted a social worker who was working with mother. The social worker and her supervisor came to the apartment complex and watched the video, after which they reported the incident to the Department for Children and Families (DCF). The property manager later turned over a copy of the video to police.

¶ 3. Based on the incident captured by the surveillance video, DCF requested an emergency care order and filed a CHINS petition. Following a hearing on April 23, 2014, the court issued an emergency order placing M.K. in DCF custody.

¶ 4. The surveillance video was admitted and played at a contested CHINS merits hearing held on July 31, 2014. At the hearing, the property manager, the social worker working with mother, and the investigating police officer testified for the State, while mother and the father, who had been at the apartment complex on the morning of the incident, testified on mother's

behalf. Mother described her actions as attempting to protect M.K. from potential danger. At the conclusion of the hearing, the court noted that the digital images of what occurred were "pretty clear in a couple of regards," and then determined, based on the video, that mother had abused M.K.

¶ 5. At the time of the incident, mother was walking along a gravel driveway behind the apartment complex while M.K. was ahead at the bottom of a grassy area that sloped several yards downward from the driveway to the apartment building. As mother walked along the driveway toward M.K. while holding her fourteen-month-old son's hand, M.K. walked up the grassy area toward the driveway but stopped short of the driveway and dropped the stuffed toy he was carrying, which caused it to roll back down the grassy area and up against the building. At that point, as the trial court found from viewing the video, it was "very evident" that mother "lost it." The court described mother grabbing M.K. and tossing him like a "ragdoll" toward the gravel driveway and then retrieving the toy and throwing it in his direction "as hard as she could have thrown it." The court found that mother moved her foot in M.K.'s direction, but declined to find that she actually kicked him, noting that there was no evidence of bruising on the child. Concluding that mother's actions amounted to abuse of M.K., the court adjudicated him CHINS.

¶ 6. The court declined to adjudicate the younger son CHINS, however. Finding that mother's abusive actions toward M.K. stemmed from her frustration at not being able to control a rowdy five-year old, the court opined that, at this stage of his life, the younger child was not at immediate risk of being subjected to the same kind of conduct.

¶ 7. On appeal, mother argues that the court's CHINS adjudication must be reversed because the evidence is insufficient to support a finding of abuse. According to mother, the video is insufficient evidence to make such a finding because it is short, grainy, without an audio component, and difficult to interpret. She points out that the court found her to be a credible witness, and that there is no evidence that M.K. sustained any injuries from her actions or was even upset with what occurred. She describes the incident as M.K. falling backwards and landing on the ground, at which point she put her foot in front of him to protect him, and then later "tossed" a plush toy toward him to let him know that he needed to carry it. She further argues that, even if the video

does demonstrate that she "tossed" her son, that conduct would be insufficient to find she abused him under any definition of abuse, including the one contained in 33 V.S.A. § 4912 dealing with reporting child abuse. For their part, both the State and M.K. ask this Court to affirm the family court's CHINS adjudication.

¶ 8. ■ "When reviewing a CHINS decision, we uphold the court's factual findings unless clearly erroneous and the court's legal conclusions when supported by those findings." *In re D.D.*, 2013 VT 79, ¶ 34, 194 Vt. 508, 82 A.3d 1143. Only those findings that are bereft of evidentiary support are clearly erroneous. *Id.*; see *In re D.B.*, 2003 VT 81, ¶ 4, 175 Vt. 618, 833 A.2d 1246 (mem.) ("When findings are attacked on appeal, our role is limited to determining whether they are supported by credible evidence.") (quotation omitted).

¶ 9. The court made its CHINS determination pursuant to 33 V.S.A. § 5102(3)(A), which defines CHINS as "a child who has been abandoned or abused by the child's parent, guardian, or custodian." The terms "abuse" or "abused" are not defined in the general definitions section applicable to all juvenile judicial proceedings addressed in chapters 51-59 of Title 33, see *id.* § 5102; nor are these terms defined specifically in chapter 53 of Title 33 regarding CHINS proceedings. There is, however, a definition of "abuse" set forth in subchapter 2 on Reporting Abuse of Children within chapter 49 of Title 33 dealing with Child Welfare Services. See 33 V.S.A. § 4912(1) (defining "abused or neglected child," in relevant part, as "child whose physical health, psychological growth and development, or welfare is harmed or is at substantial risk of harm by the acts or omissions of his or her parent"); *id.* § 4912(6) (defining "harm," in relevant part, as "physical injury or emotional maltreatment"). In her closing argument at the merits hearing, the attorney for the State relied upon this definition in arguing that mother had abused M.K.

¶ 10. Mother suggests that this Court should adopt, for CHINS purposes, the definition of abuse set forth in § 4912(1), as well as DCF's written policy on determining when a report of abuse is valid. In the event we elect not to adopt that definition, mother further suggests that we consider the common meaning of the word, particularly the definition of abuse contained in Black's Law Dictionary: "1. A departure from legal or reasonable use; misuse. 2. Cruel or violent treatment of someone; specif., physical or

mental maltreatment, often resulting in mental, emotional, sexual, or physical injury." Black's Law Dictionary 12 (10th ed. 2014).

¶ 11. ■ Section 4912 expressly states that the terms defined therein are for use in that particular subchapter, which deals with the reporting of child abuse for potential placement on the child protection registry. This Court has "expressly recognized that the statutes governing the registry process, found in chapter 49 of Title 33, have legislative goals, functions, and procedures completely different from those governing juvenile proceedings in family court . . . now reorganized in chapter 51." *In re M.E.*, 2010 VT 105, ¶ 13, 189 Vt. 114, 15 A.3d 112 (quotation omitted); see also. *In re L.M.*, 2014 VT 17, ¶ 29 n.3, 195 Vt. 637, 93 A.3d 553 (affirming CHINS finding and refusing to rely on statutory definitions in 33 V.S.A. § 4912 or administrative rules concerning child protection registry process because registry and juvenile proceedings have different goals). Thus, we decline to adopt, for purposes of juvenile proceedings, the definition of abuse set forth in § 4912(1). Cf. *People v. D.A.K.*, 596 P.2d 747, 750 n.1 (Colo. 1979) (en banc) (noting that definition of abuse set forth in child abuse reporting statute does not apply in dependency proceedings concerning whether child has been mistreated or abused).

¶ 12. ■ Nevertheless, the statutory definition in § 4912(1) can provide some guidance in determining what conduct amounts to abuse sufficient to find a child in need of care or supervision. Definitions of abuse — including those contained in § 4912(1), (6) and Black's Law Dictionary — generally refer to acts that cause — or create a real risk of causing — physical, emotional, mental, or sexual injury. Although the Legislature has not provided a definition of the term "abuse" in the juvenile proceedings chapters of Title 33, the "focus of a CHINS proceeding is the welfare of the child." *In re B.R.*, 2014 VT 37, ¶ 13, 196 Vt. 304, 97 A.3d 867 (quotation omitted). In such proceedings, the "parents' rights are at most temporarily curtailed." *Id.* (quotation omitted). The central concern is not to punish the parent for conduct involving the child but rather to protect the child from risk of future harm. See *D.A.K.*, 596 P.2d at 751 (recognizing substantial parental interest, but noting that neglect and dependency proceedings are "not intended to punish the parent for conduct involving the child"). Thus, we must liberally construe the relevant terms to carry out the central purpose of neglect and dependency proceedings — the

protection of children. Cf. *id.* at 750 (noting that general assembly did not provide definition of term "abuse," but concluding that term "must be liberally construed to carry out the declared purpose of neglect and dependency proceedings" — to secure children's "care and guidance").

¶ 13. ■ "The protection of an abused or mistreated child is an area of legitimate legislative concern that does not lend itself to more precise definition." *Id.* at 751 (rejecting respondent's vagueness challenge to statute defining dependent child as one whose parents have subjected him or her to abuse or mistreatment and stating that "[a]n ordinarily reasonable parent can understand what it means to 'abuse' or 'mistreat' a child"); cf. *In re P.M.*, 156 Vt. 303, 308, 592 A.2d 862, 864-65 (1991) (construing term "lewd and lascivious conduct" under "common-sense community standards" and concluding that term was sufficient to inform reasonably intelligent person that sexual conduct between fourteen-year-old and eight-year-old fell within its ambit). The Legislature is not required to specify particular conduct to determine when abuse has occurred. "Fundamental fairness does not require a statute to enumerate in all-encompassing examples, or exactly described acts, precisely how poorly a parent can treat a child before risking losing parental rights." *D.A.K.*, 596 P.2d at 751.

¶ 14. ■ Certainly, there is no requirement of demonstrating actual physical injury to prove abuse as a basis for a CHINS petition. See *E.J.R. v. Young*, 162 Vt. 219, 223, 646 A.2d 1284, 1286 (1994) ("Actual and completed harmful acts cannot be, and are not, a precondition to a CHINS finding."); *State v. David F. Sr.*, 1996-NMCA-018, ¶ 36, 911 P.2d 235 (stating that "it is not necessary to wait until a child has been injured, since knowingly, intentionally, or negligently placing a child in danger constitutes abuse" under statutory law) (quotation omitted). "[A] neglect or dependency proceeding is preventative as well as remedial," *E.J.R.*, 162 Vt. at 223, 646 A.2d at 1286 (quotation omitted), and thus construing the term "abuse" to require actual physical injury "would frustrate the legislative purpose to protect and secure the welfare of children." *D.A.K.*, 596 P.2d at 750.

¶ 15. ■ ■ Here, mother's testimony as to what occurred during the incident in question does not comport with the video evidence and, more importantly, the court's findings on what occurred based on its viewing of the video and its consideration of the

witnesses' testimony.* The court found that mother tossed M.K. like a ragdoll. And indeed, the video shows mother violently grabbing M.K. and forcefully flinging him onto the gravel driveway while kicking out her leg for emphasis. The court did not find that mother actually kicked M.K. because there was no indication of bruising, but the video shows that, in addition to using her legs to fling M.K. onto the driveway, mother fired the toy at M.K.'s feet at point-blank range as hard as she could, and then kicked at M.K.'s face. The child flinched and raised his hands, but it is impossible to tell whether mother actually struck the child with her foot.

¶ 16. The trial court did not err in determining that these actions constituted abuse. Indeed, even if we were to adopt the

---

* We emphasize that although we watched the video as part of the record of the proceedings below, our standard for reviewing the family court's findings regarding the video are the same as with other evidence presented in the case. We make no appellate findings based on our viewing of the video but rather consider whether the family court's findings are supported by the record and not clearly erroneous, and, if so, whether they, in turn, support the court's legal conclusion. As the United States Supreme Court stated:

> The rationale for deference to the original finder of fact is not limited to the superiority of the trial judge's position to make determinations of credibility. The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. . . . For these reasons, review of factual findings under the clearly-erroneous standard — with its deference to the trier of fact — is the rule, not the exception.

*Anderson v. Bessemer City*, 470 U.S. 564, 574-75 (1985). This is the position generally taken by courts, particularly when the video evidence is not the only evidence considered by the trial court. See *State v. Walli*, 2011 WI App 86, ¶¶ 15-17, 799 N.W.2d 898 (surveying decisions from other states and holding "that when evidence in the record consists of disputed testimony and a video recording, we will apply the clearly erroneous standard of review when we are reviewing the trial court's findings of fact based on that recording"); see also *People v. Valle*, 939 N.E.2d 10, 18 (Ill. App. Ct. 2010) (rejecting defendant's argument that appellate court should use video to conduct de novo review of voluntariness of confession because live testimony had role in resolving disputed issue of fact); *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006) (holding "that the deferential standard of review . . . applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing").

definition of abuse set forth in § 4912(1), mother's actions fell within the scope of that definition. Her conduct plainly placed M.K. at risk of future physical or emotional harm. The fact that the child appeared happy later that day, as mother contends, does not demonstrate that no abuse occurred, but rather reinforces the trial court's suspicion that this was not the only time he had been subjected to similar actions.

¶ 17. Further, we find unavailing mother's arguments that the video was difficult to interpret and that the court found her credible. As the court found, the digital images were "pretty clear in a couple of regards." Those images plainly depicted mother's actions as found by the court and described above. As for mother's credibility, the court found only that mother was credible specifically with regard to her claim that M.K. was not listening to her before she engaged in the conduct that led to the CHINS petition.

*Affirmed.*