*Note: Decisions of a three-justice panel are not to be considered as precedent before any tribunal.*

## ENTRY ORDER

SUPREME COURT DOCKET NO. 2015-143

JULY TERM, 2015

| | |
|---|---|
| In re B.R., Juvenile | } APPEALED FROM: |
| | } |
| | } Superior Court, Franklin Unit, |
| | } Family Division |
| | } |
| | } DOCKET NO. 52-3-13 Frjv |

Trial Judge: Howard Kalfus,
Specially Assigned

In the above-entitled cause, the Clerk will enter:

Father appeals from a family court order terminating his parental rights to the minor B.R. He contends that: (1) the evidence and findings failed to support the court's conclusion that his ability to parent the child had stagnated; (2) the evidence failed to support the court's finding that he could not resume parental responsibilities within a reasonable period of time; and (3) the court violated his rights to due process and equal protection by terminating his parental rights without a finding that he had abused or neglected the child. We affirm.

This is the third appeal in this matter to reach this Court. In the first, In re B.R., 2014 VT 37, 196 Vt. 304 (B.R. I), the Court addressed an adjudication of B.R. as a child in need of care and supervision (CHINS). The Department for Children and Families (DCF) had taken custody of B.R. in March 2013, when he was four months old, following mother's arrest for driving under the influence of alcohol with two older children in the car, and reports of drug use by the parents. Id. ¶¶ 2-4. We rejected father's appeal from the CHINS adjudication, holding that evidence the child was living with both parents and that mother's substantial, long-term substance abuse rendered her unable to adequately care for the child supported a conclusion that B.R. was without proper parental care necessary for his well-being. Id. ¶ 23.

While the first appeal was pending, the case proceeded to disposition, where the State sought termination of parental rights (TPR). Mother voluntarily relinquished her parental rights, but father opposed the petition. In April 2014, following a hearing, the court issued a written decision denying the State's petition. The court concluded that TPR was premature, and that father should be afforded additional time to continue with DCF services, but cautioned that TPR may be appropriate in three to six months if father failed to make adequate progress. See In re B.R., No. 2014-287, 2014 WL 7458232 (Vt. Dec. 22, 2014) (unpub. mem.) (B.R. II) (setting forth procedural history).

In June 2014, DCF filed a case plan with concurrent goals of reunification or, if father failed to complete recommended service, adoption. The plan identified thirteen areas for father to address, many of which were carried over from earlier disposition plans. These included: completing an outpatient substance-abuse program; providing urine samples for analysis as

requested; maintaining weekly communication with DCF; attending parenting meetings; working collaboratively with service providers; remaining substance-free except for prescribed medications; maintaining a safe and stable home; maintaining parent contact as scheduled; and working with service providers to improve parenting skills, including completion of a Nurturing Parents education program.

A disposition hearing was held later that month, and the court issued a written decision in July 2014, adopting the plan and maintaining DCF custody of B.R. Underlying its decision, the court found that, to date, "father had failed to document his prescribed medications, failed to fully cooperate in providing drug-screening samples, and stopped participating in intensive family services." Id. at *2. The court thus concluded that "given father's established history of drug abuse, he would have to more fully demonstrate compliance with drug counseling and testing before he could safely parent B.R." Id. We affirmed, rejecting father's challenge to the sufficiency of the evidence and findings. Id.

In late September 2014, the State filed a renewed petition seeking termination of father's parental rights. The court held a two-day evidentiary hearing in March 2015, and made findings and conclusions on the record at the conclusion of the hearing. The court found that father had failed to attend about a third of the scheduled child visits, which had "impeded [his] ability to develop more of a bond with B.R. . . . [and] better understand his needs; that he had fallen "considerably short of expectations" governing substance-abuse treatment, having "constant[ly] refused to provide urinalysis" samples and having failed to complete a substance-abuse treatment program; that he had not worked collaboratively with DCF service providers; that his refusal to provide urine samples implied a failure to remain drug-free; that he had not maintained a stable residence; and that he had not completed the Nurturing Parents education program. The trial court's findings supported its conclusion that there had been stagnation in father's ability to care for the child. See In re B.M., 165 Vt. 331, 335-36 (1996) (noting that change of circumstances sufficient to modify disposition order is often found "when the parent's ability to care for the child has either stagnated or deteriorated" (quotation omitted).

Turning to the statutory criteria for determining the best interests of the child, 33 V.S.A. § 5114(a), the court found that B.R. had a good relationship with father, and that father had generally played a constructive role in B.R.'s life when he was there, but that father had missed many scheduled visits and "you simply cannot demonstrate love and affection . . . when you're not there." See 33 V.S.A. § 5114(a)(4). In assessing the likelihood that father would be able to resume parental duties within a reasonable time, see id. § 5114(a)(3), the court noted a number of troubling concerns, including father's consistent failure to submit to drug testing, failure to complete substance-abuse treatment, missed visits with B.R, and failure to complete parent education. The failures and omissions, the court observed, had left it unable to determine whether father had his substance abuse "under control." Similarly, the court said that it could not develop "a good sense" of whether father "underst[ood] of all of B.R.'s needs. There is simply a lack of information here."

Stressing the importance of viewing the issue from the perspective of the child's needs, the court noted that it had denied the original TPR petition almost a year earlier to afford father "more of an opportunity" to make progress in addressing these concerns; that father had not successfully done so; that B.R. was two years and four months old and had been in DCF custody for two of those years; and that B.R. needed stability now, and could not afford to wait another six months. Accordingly, the court concluded that father could not resume parental

2

responsibilities within a reasonable time. The court also found that B.R. was thriving in his foster home, where he was loved and well-adjusted. Accordingly, the court concluded that termination of father's parental rights was in the best interests of the child. This appeal followed.

Father raises a number of claims under three general categories. First, he contends the trial court's finding of stagnation was unsupported by the evidence and findings. Our review of the family court's findings of fact is deferential; "we will not disturb its findings unless they are clearly erroneous." In re D.S., 2014 VT 38, ¶ 22, 196 Vt. 325 (quotation omitted). Similarly, we will affirm the judgment of the family court if its conclusions "are supported by the findings." Id. As we have often stressed, "[o]ur role is not to second-guess the family court or to reweigh the evidence, but rather to determine whether the court abused its discretion" in terminating parental rights. In re S.B., 174 Vt. 427, 429 (2002) (mem.). Assessed in light of these standards, father's claims lack merit.

Father asserts that a finding of stagnation is warranted only where the evidence shows that a parent's progress has been nonexistent or insignificant, and that here, in contrast, the evidence and findings document "a great deal of progress in a number of areas" inconsistent with the court's conclusion. Our decisions do not limit the trial court's discretion as father suggests. As we have observed, "[a] finding that a child has made some progress does not . . . preclude a finding of changed circumstances." B.M., 165 Vt. at 336. Where some parental improvement has occurred, the question is whether the improvement "substantially conformed with the expectations" of the case plan. Id. (quotation omitted); see also In re S.M., 163 Vt. 136, 140 (1994) ("If the improvement does not substantially conform with the established expectations, then the court may find a change of circumstances."). While the trial court here acknowledged that father had made some progress in his parenting skills, it also found that he had notably failed to meet expectations in a number of critical areas, including drug testing and treatment, regular child visitation, working collaboratively with service providers, and completion of the Nurturing Parents education program. These findings were sufficient to support the finding of stagnation.

Father further contends that any stagnation occurred as a result of factors beyond his control, and in particular the State's failure to afford him sufficient time to meet the case plan goals. The record does not support the claim. Although the renewed TPR petition was filed in September 2014, about two months after the court adopted an updated disposition plan in early July 2014, the renewed plan largely continued the plan of services and expectations that had been in place since October 2013. See B.R. II, 2014 WL 7458232, at *2. Moreover, the actual TPR hearing was in March 2015, so father had over eight months from the adoption of the updated disposition plan to the TPR hearing to show compliance. Accordingly, as the court here found, father had been afforded ample time to comply with the plan of services. We thus find no merit to father's challenge on this point.

Father next asserts that the court erred on several grounds in concluding that he could not resume parental responsibilities within a reasonable time. First, he claims that the court improperly shifted the burden of proof to father. He relies on the court's statement that there was "a lack of sufficient information" to conclude that father was in compliance with the case plan. As noted earlier, however, the court's statement was solely in reference to the evidence that father had failed to submit to the required drug tests, and had also failed to attend a substantial number of child visits, and that these omissions deprived the court of a basis to find compliance with the plan. Although the court did not expressly reference or repeat its prior critical factual findings in the "conclusions" section of its discussion—a better practice—the trial court made

multiple affirmative findings that father was unable to parent B.R. In particular, the court found that father was "not fully or adequately aware of B.R.'s medical or emotional needs," and could not maintain substance-free. Thus, the statement, understood in context, does not support father's claim that the court improperly shifted the burden of proof. The court's findings more broadly reflect that the trial court concluded that the State had proven by clear and convincing evidence that father could not resume parental responsibilities within a reasonable time.

Next father asserts that there was no evidence that he "was using drugs at all" or "that [the drug use] would interfere with [his] ability to parent." The trial court could reasonably infer that father—who had admitted using illegal drugs in the past—was continuing to do so from the fact that he had failed the last urinalysis that he had agreed to take within the last year, from the testimony of father's former wife that she had seen him inject illegal, nonprescription drugs in the spring of 2014, and from father's ongoing refusal to submit to further testing. Father's refusal to submit to drug testing and treatment, and continued substance abuse—contrary to the explicit expectations in the case plan—also betrayed a fundamental unwillingness to put the child's interests ahead of his own, and thus reflected adversely on his ability to resume parental responsibilities within a reasonable time.

Father also asserts that there was no evidence that prescription medications he was taking were "inappropriately prescribed" or affected his ability to parent. The court had noted that, as a result of father's failure to provide timely medical releases, it did not "have a good, clear picture of whether the medications [father was] taking [were] appropriate." The court did not find, however, that father was taking inappropriately prescribed medications, and did not rely on the question of father's use of prescription drugs in any significant respect in support of its conclusion that he could not resume parental responsibilities within a reasonable time. Accordingly, we find no basis to disturb the judgment. See In re R.W., 2011 VT 124, ¶ 17, 191 Vt. 108 (noting that we will reverse TPR judgment only where error affects party's substantial rights).

Father next claims that the evidence failed to support the court's finding that he had not secured "stable" housing, and that the finding failed to support the conclusion that he could not resume parental responsibilities within a reasonable time. He cites the court's reference to the fact that father had moved to a new apartment within the last two weeks, and asserts that there was no evidence this was "not a 'stable' home." Understood in context, however, the court's brief reference to father's housing was shorthand for its earlier finding—in the context of the change-of-circumstances analysis—that father had failed to comport with the case plan by providing DCF with information about his housing, although other evidence showed that he had lived off-and-on at various times during the past year with mother, with his former wife, with coworkers, and with his parents. Residing for a brief two weeks in one location is not evidence of an ability to provide a stable home. Furthermore, the evidence did not show that father had simply moved frequently due to his work, but that he was fundamentally unable to provide a basic, secure home for himself and B.R. Accordingly, we find no error.

Father next claims that, in observing that B.R. does not have "another three to six months to wait" for father to pursue the case plan goals, the court relied on an unsupported and arbitrary timeframe for determining whether he could resume parental responsibilities. The court was referring to its decision in April 2014, when it denied the State's first TPR petition while "caution[ing] that termination may be appropriate in three to six months if father failed to make adequate progress." B.R. II, 2014 WL 7458232, at *1. We discern nothing arbitrary or

unfounded in the court's conclusion that, nearly one year after that decision, the time for father to resume parental responsibilities had expired.

Finally, father contends that terminating his parental rights based "only on the 'best interests' of B.R." without also finding that he had abused or neglected B.R. violated his rights to due process and equal protection. The record does not disclose that any equal-protection claim was raised below; accordingly, the issue was not preserved for review on appeal. In re C.H., 170 Vt. 603, 604 (2000) (mem.).

As for the due-process claim, we previously rejected this argument in the context of father's appeal from the disposition order. B.R. II, 2014 WL 7458232, at *3 (rejecting argument that " 'the state's failure to adjudicate father at merits precludes the court from ordering' him to disposition and requiring him to comply with a plan of services"). We also concluded in that appeal that the trial court had expressly found in the context of considering the proposed disposition order that father was not ready to provide safe and independent care for the child. That disposition order, and our decision affirming it, are res judicata.

Moreover, we have recognized that the concept of parental unfitness as a constitutional predicate to terminating a parent-child relationship consistent with due process is subsumed within the statutory best-interests factors, and most directly within the consideration of the likelihood of a parent's being able to resume parental duties within a reasonable time. In re D.C., 2012 VT 108, ¶ 22, 193 Vt. 101. To the extent that father is arguing that he has been unconstitutionally deprived of his parental rights without a finding of unfitness, that argument is at odds with our holding in D.C. and the trial court's findings in this case.

Affirmed.

BY THE COURT:

_____
Marilyn S. Skoglund, Associate Justice


_____
Beth Robinson, Associate Justice


_____
Harold E. Eaton, Jr., Associate Justice